IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAYLAN T.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 06986 |
| v. ) | |
| ) | Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jaylan T.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 19, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 22, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.  **Procedural History**

On April 7, 2018, Plaintiff filed a claim for child's insurance benefits and on March 26, 2019, Plaintiff filed an application for SSI, both alleging disability since November 30, 2017, due to schizoaffective disorder. [R. 14, 166-67.] Plaintiff's claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 16, 2019. [R. 82.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 82-84.] Vocational expert ("VE") Kari Seaver also testified at the hearing, as did Plaintiff's cousin Tiffany Eaton. [R. 82-85, 115, 133.] A subsequent hearing was held on January 17, 2020. [R. 32.] Plaintiff was represented by counsel at the subsequent hearing, and he, Eaton, and Seaver all again testified. [R. 32-34, 41, 46, 50.] On February 27, 2020, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 26.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

II.  **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16-17.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since November 30, 2017, the alleged onset date. [R. 17.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: schizoaffective disorder and anxiety. [R. 17-18.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security

Administration's listings of impairments (a "Listing"). [R. 18-19.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with certain non-exertional limitations. [R. 19-24.] Plaintiff can never climb ladders, ropes, or scaffolds, can never work at unprotected heights, can never operate a motor vehicle, and can occasionally work around moving mechanical parts. [R. 19-24.] Plaintiff is capable of understanding, remembering, and carrying out simple, routine, repetitive tasks and is able to perform simple work-related decisions. [R. 19-24.] Plaintiff can have occasional contact with supervisors and coworkers and can have no contact with the public. [R. 19-24.] At step four, the ALJ concluded that Plaintiff has no past relevant work. [R. 24.] At step five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 24-26.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any

3

other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's]

4

analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II.     Analysis**

Plaintiff makes two arguments challenging the ALJ's decision: (1) the ALJ's mental RFC assessment lacks support; and (2) the ALJ erred in conducting a symptom assessment. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in assessing Plaintiff's mental RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

The Court agrees with Plaintiff that the ALJ improperly assessed Plaintiff's mental RFC. The ALJ found at step three that Plaintiff had moderate limitations in concentration, persistence, or maintaining pace. [R. 18.] The ALJ accounted for Plaintiff's moderate CPP limitations by limiting Plaintiff to "simple, routine, repetitive tasks" and performing "simple work-related decisions." [R. 19-24.] But the Seventh Circuit has "underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Indeed, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Id*. In some circumstances, however, a limitation to unskilled or simple, routine work can account for CPP difficulties if the record indicates that the limitation addresses the underlying symptoms. *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *4 (N.D. Ill. June 6, 2022) (collecting cases). This includes instances where a medical opinion adequately translates a finding of moderate CPP limitations into an RFC that accounts for a claimant's specific impairments. *See, e.g., Pavlicek v. Saul*, 994 F.3d

777, 783 (7th Cir. 2021) (affirming where agency consultants "translated" moderate CPP checklist ratings into an RFC that claimant "could carry out simple instructions and make simple decisions with no significant limitation"); *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) ("True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations."); *Morrison v. Saul*, 806 F. App'x 469, 474 (7th Cir. 2020) ("The ALJ drew this restriction from the opinion of the medical expert, Dr. Rozenfeld, which is a permissible way of "translating" medical evidence into work-related restrictions."). "The question to be answered in every case is whether the ALJ has adequately explained, with support from the medical record," how the identified restrictions in the RFC address "the claimant's specific concentration, persistence, or pace limitations." *Christopher G.*, 2022 WL 1989119, at *4.

In this case, the ALJ did not adequately support the restrictions identified to account for Plaintiff's moderate CPP limitations. The ALJ neither relied on a medical opinion's translation of Plaintiff's moderate concentration, persistence, and pace limitations into an RFC, nor provided a meaningful, reasoned explanation for why the particular restrictions she identified in the RFC accounted for Plaintiff's moderate concentration, persistence, or pace limitations.

First, no medical opinion that the ALJ credited indicated that Plaintiff's CPP limitations could be accommodated by a limitation to simple, routine tasks and simple decision-making. The ALJ assessed opinions from only two medical sources, the agency consultants at the initial and reconsideration levels. [R. 22-23.] The agency consultants found that Plaintiff had mild CPP limitations. [R. 172, 186.] They indicated that Plaintiff "retains the mental capacity to understand and remember multi-step instructions," and that Plaintiff "would have no difficulty concentrating sufficiently for a normal work period and could make adequate work-related decisions." [R. 175,

6

189.] The ALJ largely found the consultants' opinions persuasive, but importantly, noted that where consultants' findings "have not been adopted, more consideration was given to the claimant's testimony." [R. 23.] Indeed, in this case, the ALJ did not adopt the consultants' findings with respect to CPP limitations; where the consultants opined that Plaintiff had mild limitations and included no related limitations in their narrative RFC, the ALJ concluded that Plaintiff actually had moderate CPP limitations and included limitations to simple, routine work and simple work-related decisions. [R. 19-24.] The ALJ thus did not draw her limitation to simple, routine work and simple work-related decisions from any opinion of record.

In this case, the ALJ's rejection of the opinion evidence that provided an assessment of Plaintiff's CPP limitations "created an evidentiary gap that rendered the ALJ's RFC unsupported by substantial evidence." *Ana M.A.A. v. Kijakazi*, No. 19-CV-7559, 2021 WL 3930103, at *2 (N.D. Ill. Sept. 2, 2021). The Seventh Circuit has explained that "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). Although an ALJ need not adopt any particular medical opinion in crafting the RFC, "an ALJ cannot reject all the relevant medical RFC opinions and then construct a 'middle ground' and come up with [her] own RFC assessment without logically connecting the evidence to the RFC findings." *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *5 (N.D. Ill. Aug. 25, 2021) (cleaned up). Nor may an ALJ "play doctor" by "using her own lay opinions to fill evidentiary gaps in the record" caused by the absence of credited medical opinion evidence. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). But that is what the ALJ impermissibly did in this case.

Nor did the ALJ take the other acceptable course and analyze other evidence of record that suggests that the limitations she identified address "the claimant's specific concentration,

7

persistence, or pace limitations." *Christopher G.*, 2022 WL 1989119, at *4. While the ALJ included social limitations in the RFC to address Plaintiff's difficulties interacting with others, the ALJ did not find that Plaintiff's difficulties with concentration, persistence, and pace only arose when Plaintiff encountered particularly stressful tasks or was around other people. *C.f. Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (affirming limitation to simple, routine tasks with additional social restriction where claimant's "impairments surface[d] only when he is with other people or in a crowd"). Indeed, the ALJ provided virtually no analysis about the nature of the Plaintiff's specific moderate CPP limitations. In analyzing the consultants' opinions, the ALJ noted that she gave "more consideration to the claimant's testimony" in the areas where she departed from the consultants' views. [R. 23.] At step three, the ALJ cited, but did not analyze, three pieces of testimony from Plaintiff in determining that Plaintiff had moderate CPP limitations: that Plaintiff had a short attention span of only about ten minutes; that Plaintiff did not handle stress well; and that Plaintiff was able to maintain persistence enough to do light housework and make simple meals. [R. 18.] The ALJ's cursory citations do not adequately explain the nature of the moderate CPP limitations she credited, nor do they explain why the ALJ believed Plaintiff's moderate CPP limitations were necessarily related to the complexity of the task before him. If the ALJ believed that a limitation to simple, routine tasks and simple decision-making accounted for Plaintiff's CPP limitations, she was required to explain why she believed so with reference to the record. *See, e.g., Christopher G.*, 2022 WL 1989119, at *5 (remanding where ALJ "accounted for" claimant's CPP limitations "without any explanation as to how in fact that was done, what record evidence supported that conclusion, or why the accommodations in the RFC addressed Claimant's anxiety and depressive symptoms and resulting limitations in concentration, persistence, and pace"). The ALJ did not do so here.

8

Instead, the ALJ appeared to engage in the logical leap that the Seventh Circuit has indicated is impermissible—the ALJ simply assumed, without a link to the record evidence, that a restriction to simple, routine tasks and simple decision-making accounted for Plaintiff's moderate CPP limitations. *See, e.g., Crump*, 932 F.3d at 570; *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("[T]here is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace."); *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."). The ALJ thus failed to build an accurate and logical bridge between the record and the mental RFC and failed to properly account for the moderate CPP limitations she found at step three in the RFC.

Because the ALJ's failure to properly assess Plaintiff's mental RFC on its own warrants remand, the Court need not evaluate the remaining issues identified by the Plaintiff. On remand, however, the Administration should not construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [19] is granted, and the Commissioner's motion for summary judgment [22] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

9

Date: 2/23/2023

_____
BETH W. JANTZ
United States Magistrate Judge